IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INDEPENDENCE LEAD MINES, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. CV06-495-C-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| HECLA MINING COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court in the above-entitled matter is Defendant's motion to dismiss. The motion has been fully briefed and is ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2).

**Factual and Procedural Background**

The dispute here centers around the Mining Lease Agreement ("Lease Agreement") which was entered into between the parties in 1968 and governs the relationship of the parties as to their mining efforts. In 1995 Defendant Hecla Mining Company ("Hecla") began renewed efforts at mining on property owned by Plaintiff Independence Lead Mines Inc. ("Independence") containing the Gold Hunter deposit by commencing activities to explore the development and mining of Gold Hunter; also referred to as the "Gold Hunter Project." Based on these exploration efforts, on February 3, 1997, the Hecla Board of Directors approved the expenditure of $3,000,000 to go forward with the Gold Hunter Project and conduct a Feasibility Study, which was completed in May of 1997. During 1997

MEMORANDUM ORDER - Page 1
07ORDERS\Independence_dis.WPD

Independence alleges that Hecla began reporting positive exploration results to investors which Independence contends were unreliable and overstated the profitability of the Gold Hunter Project. Hecla's Board of Directors later approved funds to put Gold Hunter into full production by June of 1998. This decision, Independence argues, was based on the Feasibility Study which was faulty, unreliable, failed to detail the potential risk factors, and improperly evaluated the market condition and market price. In 2001 Hecla decided to continue with production in the Gold Hunter Project even though the project was not producing a profit.

Independence filed suit in state court on June 17, 2002 for breach of contract by Hecla as to the Lease Agreement alleging Hecla's activities in relation to Gold Hunter were contrary to the terms of the parties contract as they were unreasonable, wasteful, and unprofitable. Following a court trial, the state district court issued lengthy findings of facts and conclusions of law and finding in favor of Hecla. On April 24, 2006, the Idaho Supreme Court affirmed the decision. See Independence Lead Mines Co. v. Hecla Mining Co., 137 P.3d 409 (Idaho 2006). Thereafter, on December 11, 2006, Independence filed its complaint in this case alleging securities law violations, mail fraud, civil rights violation, and state law claims arguing the Lease Agreement should be deemed terminated and/or rescinded. (Dkt. No. 1). The complaint's allegations focus on the Feasibility Study and Hecla's actions in deciding to undertake and continue the Gold Hunter project. Specifically, Independence asserts that the Feasibility Study was based on flawed information and unreliable. Hecla has filed the instant motion to dismiss based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Standard of Law**

1)   12(b)(1):

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations

supporting subject matter jurisdiction. <u>Id.</u> On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." <u>Id.</u> When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1988). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989); <u>Trentacosta v. Frontier Pac. Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing <u>Thornhill</u>, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims ." <u>Thornhill</u>, 594 F.2d at 733 (quoting <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting <u>Augustine</u>, 704 F.2d at 1077). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." <u>Augustine</u>, 704 F.2d at 1077 (citing <u>Thornhill</u>, 594 F.2d at 733-35). This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper.

2)    12(b)(6):

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." <u>Wyler Summit P'ship v. Turner Broad. Sys.</u>,

MEMORANDUM ORDER - Page 3
07ORDERS\Independence_dis.WPD

Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. See United States v. Howell, 318 F.2d 162, 166 (9th Cir. 1963).

**Analysis**

I.   Motion to Dismiss:

Hecla's motion to dismiss asserts the complaint should be dismissed in its entirety based on the Rooker-Feldman Doctrine, issue/claim preclusion, and the statute of limitations. Independence opposes the motion arguing the claims before this Court is timely filed and distinct from the issues raised before the state court.

    A.   Securities Claims:

Independence raises as its first cause of action various securities violations pursuant to the Securities Exchange Act of 1934, namely: § 10b, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, and § 20(a). Hecla argues the Complaint fails to state a cause of action, the claims are precluded by the Idaho Supreme Court's ruling, and the claims are otherwise barred by the applicable statute of limitations.

        1)     <u>Statute of Limitations</u>:

Independence argues that the cause of action here was not ripe until Independence was injured, which was when the Idaho Supreme Court issued its decision in 2006 and is therefore timely. (Dkt. No. 10, p. 13). Hecla argues these claims should have been brought within two years of discovery of the facts constituting the violations or five years after the violations, which ever is earlier. In this case, Hecla contends the claims should have been brought within two years of the filing of the state court complaint in June of 2002.

"[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws ... may be brought not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658; <u>see also</u> Exchange Act 15 U.S.C. § 9, 15 U.S.C. § 78i(e) ("No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation."). Section 20A has an express statute of limitations, which provides that '[n]o action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation.'" <u>Johnson v. Aljian</u>, 490 F.3d 778, 781 (9th Cir. 2007) (quoting Exchange Act § 20A(b)(4)). Under either time period, the securities claims had to be raised, at the very latest, within five years of the alleged securities violation or transaction that is the subject of the violation.

Independence's argument that it suffered its "injury" in 2006 is without merit as the applicable statutes of limitations apply to either the date of the discovery of the facts constituting the violation or the date of the violation itself. The violation alleged in the securities claims here relates to Hecla's activities in 1997 and 1998. As Independence states in its opposition to the motion to dismiss "Independence bought shares in Hecla in January and February of 1998" in reliance on allegedly unreliable information from Hecla. (Dkt. No.

10, p. 11).  At the very latest, Independence either knew of the violation or the violation had occurred by June of 2002 when Independence filed its suit in state court.[1]

### 2) Failure to State a Claim:

Hecla further argues that Independence has failed to state a securities claim. The Court agrees. Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted).

"[T]o prove violation of either Section 10(b) or Rule 10b-5, the private plaintiff must demonstrate that the alleged fraud occurred 'in connection with the purchase or sale of a security'. Once this foundational requirement has been met, the plaintiff must prove five elements: 1. misrepresentation (or omission, where there exists some duty to disclose); 2. materiality; 3. scienter (intent to defraud or deceive); 4. reliance; and 5. causation. The plaintiff must prove both actual cause ("transaction causation") and proximate cause ("loss causation")." Johnson, 490 F.3d at 782 (citations omitted).

The complaint here fails to allege with any particularity the misrepresentation and scienter elements. Independence does not allege that there was a fraudulent statement but, instead, that Hecla decided to take a risky venture which proved to be unprofitable. Independence's claim is that they held stock in Hecla and lost money on that stock because Hecla made bad business decisions relating to the Gold Hunter project. This is neither a fraud nor a securities claim. Moreover, in order for Independence's claim to prevail, the factual findings in this case would have to directly contradict the factual findings of the state court; such as the state court's finding that "Hecla acted in good faith and as a reasonably

---

[1] This Court maintains that the statute of limitations period began prior to June of 2002. However, if the June 2002 date is used, Independence's 20(a) claim falls within the five year statute of limitations and is timely. Regardless, as noted below, the Complaint fails to state a § 20(a) securities claim and is dismissed on that basis.

MEMORANDUM ORDER - Page 6
07ORDERS\Independence_dis.WPD

prudent... mining business," consistent with the contract, and did not commit waste. (Dkt. No. 9, Att. 3, p. 33).

Further, there is also no allegation that there was fraud in connection with a purchase or sale of securities. Independence makes reference to Hecla's efforts at raising capital to fund the Gold Hunter project by selling securities based on allegedly "improper public information" and those sales "enabled Hecla to then further damage Independence via its waste under the lease agreement." (Dkt. No. 10, p. 12). This does not state a securities claim. Moreover, the damages Independence alleges are insufficient to satisfy the causal connection requirement of a securities claim. See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005); In re Daou Systems, Inc., Securities Litigation, 411 F.3d 1006 (9th Cir. 2005). Independence acknowledges the damages it suffered are "secondary" but maintains that its damages still flow as a direct consequence of Hecla's securities activities. The loss causation requirement demands more in order to demonstrate the requisite "causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." Daou, 411 F.3d at 1025. Because there is no fraud alleged nor any connection between fraud and Independence's alleged injury, these claims fail.

Section 20A provides a cause of action against "[a]ny person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information." Exchange Act § 20A(a). "In order to prove a prima facie case under § 20(a), plaintiff must prove: (1) a primary violation of federal securities laws...; and (2) that the defendant exercised actual power or control over the primary violator...." Howard v. Everex Systems, Inc. 228 F.3d 1057, 1065 (9th Cir. 2000) (citation omitted). "Claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act." Johnson, 490 F.3d at 782 (citation omitted). However, "the plain meaning of the term 'violates' does not require that the predicate claim be filed within its own period of limitations." Id. at 783. Here, the predicate violations fail not only because they were filed outside of the applicable time limitations but also because, as determined above, the complaint has failed to state a cause of action as to the predicate securities claims. Thus, the § 20(a) claim also fails.

B.      Wire and Mail Fraud Claims:

Independence's Complaint cites claims under 18 U.S.C. § 1341 and 1343 which are Federal criminal statutes for wire and mail fraud. Specifically, Independence alleges that Hecla engaged in a scheme or artifice devised with the intent to defraud Independence by use of the mail and other instruments of interstate commerce. As Hecla points out, there is no private right of action for these criminal statutes and these claims are dismissed. See Wilcox v. First Interstate Bank, 815 F.2d 522, 533 n. 1 (9th Cir. 1987) (recognizing that no private right of action exists under 18 U.S.C. § 1341).

C.      Civil Rights Claims:

Hecla argues the Third and Fourth Claims raised in the complaint are barred by claim preclusion because they have already been litigated in state court. The Third Claim raises a § 1983 action asserting the Idaho Supreme Court's decision in the state case constitutes a taking of Independence's property and a deprivation of Independence's substantive due process rights. The Fourth Claim is titled "State Law Claims" and alleges the Idaho Supreme Court's decision violates the Constitution of the United States of America. These claims arguing that the Idaho State Supreme Court wrongly decided a case are precluded by the Rooker-Feldman doctrine.

The Rooker - Feldman doctrine bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004); see also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983), Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). The Supreme Court reasoned in Exxon Mobil Corp. v. Saudi Basic Industries Corp. that the Rooker -Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker -Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." 544 U.S. 280, 284 (2005). "Essentially, the doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced' from asking district courts to review and reject those judgments." Henrichs v. Valley View Development, 474 F.3d 609, 613 (9th Cir. 2007) (quoting Exxon Mobil, 544 U.S. at 284).

"Absent express statutory authorization, only the Supreme Court has jurisdiction to reverse or modify a state court judgment. The clearest case for dismissal based on the Rooker-Feldman doctrine occurs when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision....'" Id. (citation omitted). This is precisely the argument asserted here by Independence who is simply challenging the Idaho Supreme Court's decision and asking this Court to find in their favor. The Rooker-Feldman doctrine appropriately bars such claims.

D. Claim Preclusion:

Hecla argues that all of Independence's claims are barred by claim preclusion. State judicial proceedings are afforded full faith and credit such that *res judicata* and other preclusion doctrines may operate to limit or exclude causes of action in federal court. 28 U.S.C. § 1738. To determine whether a state judgment should have preclusive effect in a federal action, federal courts apply the state's rules governing preclusion. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83-85 (1984). The Idaho Supreme Court has stated that "*Res judicata* is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel). Under principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." Lohman v. Flynn, 78 P.3d 379, 386 (Idaho 2003) (citations omitted); see also Coeur d'Alene Tribe v. Asarco Inc., 280 F.Supp.2d 1094, 1117-19 (D. Idaho 2003) ("Although the literal definition of the term *res judicata* is expansive enough to cover both preclusion of relitigation of the same cause of action and relitigation of the same issue, the modern tendency is to refer to the aspect of the doctrine that precludes relitigation of the same issue in a separate cause of action as collateral estoppel, and to refer to that aspect preventing relitigation of the same cause of action as *res judicata*.") (quotations and citations omitted)).

"*Res judicata* thus applies to protect litigants from the burden of litigating the same cause of action with the same party or its privity." Coeur d'Alene Tribe, 280 F.Supp.2d

MEMORANDUM ORDER - Page 9
07ORDERS\Independence_dis.WPD

1094, 1117-19 (D. Idaho 2003) (citing Hindmarsh v. Mock, 57 P.3d 803 (Idaho 2002)). *Res judicata* "bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made. Lohman, 78 P.3d at 386 (citing Hindmarsh, 57 P.3d at 805 (citations omitted)). For *Res judicata* to preclude litigation the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question. Coeur d'Alene Tribe, *supra* (citations omitted). "The purposes of these judicially created rules are to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." Id. (citation omitted).[2]

As to collateral estoppel, the Idaho Supreme Court has delineate five factors that "must be considered in determining whether collateral estoppel will act as a bar":

> 1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; 2) the issue decided in the prior litigation was identical to the issue presented in the present action; 3) the issue sought to be precluded was actually decided in the prior litigation; 4) there was a final judgment on the merits in the prior litigation; and 5) the party against whom the issue is asserted was a party or in privity with a party to the prior litigation.

Lohman, 78 P.3d at 386 (citation omitted).

Independence maintains that the claims raised here are distinct for three reasons: 1) this action seeks redress for violations of Federal claims; 2) the state suit was directed entirely to the interpretation and enforcement of the contract whereas this action is directed at the inception of the agreement and whether there was ever a meeting of the minds for there to have been formation of the contract; and 3) the pending action for rescission was not ripe

---

[2] The Idaho Supreme Court has recognized that the three fundamental purposes served by *res judicata* are:

> First, it "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims. The doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.

Lohman, 78 P.3d at 386.

MEMORANDUM ORDER - Page 10
07ORDERS\Independence_dis.WPD

until the Idaho Supreme Court ruled.  As determined above, the Federal claims for Securities violations, RICO, and Mail and Wire Fraud are all without merit.  Thus, only the second and third reasons asserted by Independence need be discussed here.

As to Independence's second basis, the distinctions forwarded are untenable.  The complaint filed here presents the same parties, claims, arguments, and issues as those raised in the state court cause of action.  The decision of the trial court specifically stated in its opening comment that:  "Independence claims that Hecla has breached the express terms of the agreement as well as the prudent operator obligation implied under the agreement by undertaking and continuing the mining operation and by using improper mining methods.  Independence seeks declaratory judgment terminating the agreement, and injunction requiring Hecla to surrender Independence's property, and damages for waste." (Dkt. No. 9, Att. 3, p. 1).   These are the very issues raised here.

The fact that the argument has been raised and litigated, is particularly evident from Independence's position here that no contract exists because there was no meeting of the minds.  The state court went to great lengths discussing the intent of the parties and the manner in which the parties negotiated the contract.  (Dkt. No. 9, Att. 3, p. 27) (i.e. "Both sides to this agreement were very experience in the mining industry and spent a considerable amount of time negotiating the details of the agreement.").  In the state court proceeding the burden was upon Independence to prove the existence of a contract which Independence did successfully.  (Dkt. No. 9, Att. 3, p. 32).  It is wholly inconsistent for Independence to come before this Court and argue that no contract exists because they now disagree with the state court's interpretation of the contract.  This is not a different case, just different arguments by the same parties on the same claims and facts.

As to Independence's final effort to avoid the preclusive effect of the state case, it too fails.  Independence argues it "could not raise the formation issues unless and until it was determined [by the Idaho Supreme Court] that Independence's fundamental understanding of the risks assumed in the contract were different than that of Hecla." (Dkt. No. 10, p. 7). To support this argument Independence cites a case where the court determined that a second lawsuit for declaratory judgment on amendments to contract covenants was distinct from the first lawsuit where the court adopted the contract covenants.  Smith v. U.S.R.V. Properties,

118 P.3d 127 (Idaho 2005). In <u>Smith</u> the second lawsuit was proper as it involved facts and claims relating to new amendments to the contract covenants adopted after the first lawsuit. Here, there is no similar change in circumstance. Independence simply disagrees with the state court's interpretation of the contract and now wants to terminate the contract. Nothing precluded Independence from raising an alternative argument in the state action alleging the contract lacked a meeting of the minds and, therefore, there was no contract. Moreover, the state court has already decided this issue and determined that the contract between the parties existed.

There has been final judgments on the merits as to the issues raised in the state case. <u>See</u> <u>Independence Lead Mines Co. v. Hecla Mining Co.</u>, 137 P.3d 409 (Idaho 2006). Because the claims and issues presented here were previously raised, argued, and finally decided on the merits in the prior state court actions between these same parties, the claims here are precluded and the motion to dismiss shall be granted.

## II.     Motion for Leave to Amend

Independence seeks leave to amend its complaint to allege additional facts and claims. Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit Court of Appeals recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" <u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981).

The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) rests in the sole discretion of the trial court. <u>Id.</u> The Court may decline to grant a Rule 15(a) motion for leave to amend if amendment would cause the opposing party undue prejudice, is sought in bad faith, or would constitute an exercise in futility. <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183,186 (9th Cir. 1987). Thus, the four factors that are commonly used to determine the propriety of a motion for leave to amend are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment. <u>Id.</u>

However, "[t]hese factors . . . are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." Id.; see also Webb, 655 F.2d at 979 ("The mere fact that an amendment is offered late in the case is . . . not enough to bar it."); Bowles v. Beade, 198 F.3d 752, 758 (9th Cir. 1999). Further, the Ninth Circuit has held that although all these factors are relevant to consider when ruling on a motion for leave to amend, the "crucial factor is the resulting prejudice to the opposing party." Howey v. United States, 481 F.2d 1187, 1189 (9th Cir. 1973). Indeed, prejudice is the touchstone of the inquiry under Rule 15(a). Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." Howey, 481 F.2d at 1190.

Here, Independence seeks to amend its Complaint to allege a Federal racketeering claim arguing the mail fraud and wire fraud alleged in the Complaint are predicate acts to a RICO claim. Independence relies on its securities fraud allegations as a basis for alleging a scheme to defraud under RICO. Hecla argues any amendment would be futile because the allegations fail to state a RICO claim and any RICO claim is time barred by the four-year statute of limitations for RICO claims. See Rotella v. Wood, 528 U.S. 549, 554(2000). The Court agrees. "The limitations period for civil RICO actions begins to run when a plaintiff knows or should know of the injury which is the basis for the action. Thus, Plaintiffs' RICO claims accrued when Plaintiffs had actual or constructive knowledge of [Defendant's] fraud." Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 364 (9th Cir. 2005). The complaint here was filed in December of 2006 in relation to allegedly wrongful conduct by Hecla occurring in 1997 and 1998. At the very latest, Independence knew of the injury complained of in June of 2002 when it filed its state court action. As such any RICO claim raised here is too late.

In addition, Independence requests leave to amend its civil rights and securities claims. Based on the foregoing the Court concludes that any amendment in this case would be futile because the claims are all barred by claim preclusion.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. No. 8) as to all claims in the Complaint. This case is **DISMISSED IN ITS ENTIRETY**.

DATED: **September 24, 2007**

Honorable Edward J. Lodge
U. S. District Judge